#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GRANT M. NELSON, ) | |
| ) | |
|        Plaintiff/Judgment Creditor, ) | |
| ) | |
| v. ) | |
| ) | |
| STEFANIE D. HARDACRE, ) | |
| ) | |
|        Defendant/Judgment Debtor, ) | Case No. 15-7454-JWL |
| ) | |
| v. ) | |
| ) | |
| PROGRESSIVE NORTHWESTERN ) | |
| INSURANCE COMPANY, ) | |
| ) | |
|        Defendant/Garnishee. ) | |
| ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff/Judgment Creditor Grant M. Nelson's Motion to Quash Subpoena Directed to Nelson's Attorney, Michael Kuckelman, or Alternatively, for a Protective Order (**ECF No. 44**). For the reasons set forth below, Nelson's motion shall be **GRANTED.**

### Background[1]

This case arises from a three-vehicle motor vehicle accident which occurred in October 2013. Those vehicles were driven by Plaintiff/Judgment Creditor Nelson

---

[1] Unless otherwise indicated, the facts in this section are taken from the parties' pleadings and briefs regarding the instant dispute. This background information should not be construed as judicial findings or factual determinations.

("Nelson"), Defendant/Judgment Debtor Stefanie Hardacre ("Hardacre"), and a third party, Marshall Leffler.  As a result of the incident, Nelson suffered physical injuries in addition to damage to his motorcycle.  Each of the parties was insured by a separate company: Progressive Northwestern Insurance Company ("Progressive") became involved as the insurer of Hardacre; Nelson's insurer was Farm Bureau Insurance, and Leffler was represented by Travelers Insurance ("Travelers").

### Travelers

While Travelers and Progressive were considering Nelson's claims, liability for the accident was also disputed in arbitration between the two carriers.  Travelers eventually paid Nelson its bodily injury liability limits of $100,000 and for the property damage to Nelson's motorcycle.

### Progressive

Progressive's policy limit was $50,000, but after its investigation of Nelson's claim, Progressive concluded Hardacre was not at fault for the accident and denied the claim.  Nelson argues Progressive prematurely closed its file on his claim—only three days after it acknowledged its receipt—thereby acting in bad faith and breaching its duty to Hardacre.

From his initial claim to the present, Nelson was represented by attorney Michael Kuckelman.  Mr. Kuckelman actively pursued Nelson's claims against both Travelers and Progressive, writing letters on his client's behalf and speaking with insurance claims representatives.  After Progressive notified Nelson of its intent to deny any claim by

Nelson, Mr. Kuckelman sent a letter to Progressive—and copied both Stefanie Hardacre and her father, Bill Hardacre (the named insured)—regarding what he felt was Progressive's breach of duty.

### Johnson County, Kansas District Court

Nelson filed suit against Hardacre in the District Court of Johnson County, Kansas in April 2014.[2] After Nelson filed his lawsuit, Mr. Kuckelman personally contacted Bill Hardacre to discuss a potential claim against Progressive, and followed up with a written letter memorializing their conversation. At some point during the lawsuit, Progressive examined both Stefanie and Bill Hardacre by deposition regarding their communications with Mr. Kuckelman and neither could remember such communications with any level of detail.

Several weeks after the case was filed, Nelson made a settlement offer to defendant Stefanie Hardacre, which was rejected by Progressive. Nearly a year after the case was filed, the parties reached a settlement. Under the terms of the settlement, Stefanie Hardacre waived her right to a jury trial and agreed not to present evidence or put on a defense at trial. In exchange, Nelson agreed not to collect the judgment from Hardacre, but to seek to collect from Progressive. Judgment was later entered in favor of Nelson and against Hardacre in the amount of $530,539.11. Nelson, as judgment creditor, filed garnishment proceedings in Johnson County against Progressive to collect on his judgment.

---

[2] *Grant M. Nelson v. Stefanie D. Hardacre*, Case No. 14CV02417, Div. 7 (Johnson Co. Dist. Ct., Kansas, filed April 11, 2014).

**United States District Court**

On April 21, 2015, Progressive removed the garnishment proceeding to this Court. Nelson proceeds on the theory that Progressive acted in bad faith when it denied his claim. Progressive maintains it handled Nelson's claim in good faith and denies coverage exists to satisfy his judgment.

**Nelson's Motion to Quash the Deposition Subpoena
Directed at His Counsel Michael J. Kuckelman (Doc. 44)**

On November 16, 2015, Progressive filed a Notice to Take Deposition (ECF No. 42) of Mr. Kuckelman after serving on him the deposition subpoena. Nelson seeks to quash the subpoena on the bases that: 1) the subpoena was improperly served; 2) it seeks disclosure of privileged or protected information from his counsel; and 3) Progressive's reasons for deposing opposing counsel do not meet the *Shelton*[3] criteria. Nelson asks that, if the Court determines the subpoena must stand, the Court issue a protective order limiting the topics of inquiry.

Progressive claims it does not seek any privileged communications or materials from Mr. Kuckelman. It asserts because Mr. Kuckelman represented Nelson during Progressive's management of his claim, he participated in discussions with Progressive prior to suit being filed. Most importantly, Progressive maintains Mr. Kuckelman took the extraordinary step of contacting Bill Hardacre, Progressive's own insured, *after* the lawsuit was filed. Progressive believes Mr. Kuckelman is not only a fact witness to its

---

[3] *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (criteria discussed *infra* Part A).

handling of the claim, but the attorney's communications—with Progressive, the other insurance companies, and Bill Hardacre—demonstrate he was an impetus to the bad faith claim. Progressive argues Mr. Kuckelman's communications with those parties constitute relevant, discoverable information.

Nelson claims, and Progressive does not dispute, that the parties have engaged in multiple discussions regarding the deposition of Mr. Kuckelman. In fact, Nelson reveals the parties have exchanged nearly twenty emails and letters on this topic. The Court therefore finds that the parties have sufficiently conferred as required by D. Kan. Rule 37.2.

**A.     Legal Standards**

Multiple Federal Rules of Civil Procedure are implicated when a party seeks to quash a deposition subpoena served on opposing counsel, including Rules 45, 26, and 30. Pursuant to Rule 45(d)(3)(A), the Court "*must* quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden."[4] More generally, Rule 26(c)(1) allows the court to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[5] Such protective orders may include prohibiting the discovery altogether, specifying a discovery method other than the one sought, or limiting inquiry into specific topics.[6] The court has broad discretion over

---

[4] Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).
[5] Fed. R. Civ. P. 26(c)(1).
[6] *Id*.

discovery matters and to decide when a protective order is appropriate.[7]

Rule 30(a)(1) allows a party to depose "any person," including opposing counsel. However, the deposition of opposing counsel is often met with skepticism because routinely allowing such depositions could encourage "delay, disruption of the case, harassment, and unnecessary distractions into collateral matters."[8] In *Shelton v. American Motors Corp.*, the Eighth Circuit Court of Appeals explained:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.[9]

Although it recognized there must not be a complete bar to the deposition of opposing counsel, the *Shelton* court provided a set of criteria by which it felt depositions of opposing counsel should be evaluated. The court outlined that the party seeking the deposition carries the burden to show: "(1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and

---

[7] *See S.E.C. v. Merrill Scott & Assoc., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) ("The district court has broad discretion over the control of discovery . . . ") (internal citations omitted); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) ("Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).
[8] *Ed Tobergte Associates Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 554 (D. Kan. 2009) (quoting *Shelton,* 805 F.2d at 1327)).
[9] *Shelton,* 805 F.2d at 1327.

nonprivileged; and (3) the information is crucial to the preparation of the case."[10]

The Tenth Circuit first approved of the use of this heightened standard in *Boughton v. Cotter Corp.*, a 1995 case.[11] However, it limited its holding to find that "ordinarily the trial court at least has the *discretion* under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria . . . are *not* met."[12] Later, in *Thiessen v. General Electric Capital Corp.*,[13] decided in 2001, the Tenth Circuit suggested it had adopted the *Shelton* criteria in *Boughton*. Both before and after the Tenth Circuit issued its *Boughton* ruling, "courts in this District have almost universally applied the *Shelton* criteria in deciding whether to allow the deposition of opposing trial counsel."[14] Citing a 2000 District of Kansas case, *Simmons Foods, Inc. v. Willis*,[15] some courts in this district have also referred to this heightened standard as the "*Simmons* criteria."[16] For the purpose of clarity, and because the parties here refer to the test as the *Shelton* criteria, the Court shall do likewise.

B. **Proper Service**

The Court first addresses Nelson's threshold argument that the subpoena must be quashed because it was improperly served. Fed. R. Civ. P. 45(b)(1) mandates that a

---

[10] *Ed Tobergte Associates Co.*, 259 F.R.D. at 554.
[11] *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir.1995).
[12] *Id*.
[13] *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001).
[14] *Ed Tobergte Associates Co*, 259 F.R.D. at 554.
[15] *Simmons Foods, Inc. v. Willis*, No. 97–4192–RDR, 191 F.R.D. 625, 630 (D. Kan. 2000).
[16] *See Raytheon Aircraft Co. v. United States*, No. 05-2328-JWL-DJW, 2007 WL 1115198, at *2 (D. Kan. Apr. 13, 2007) (noting, "In the District of Kansas, this criteria has become known as the *Simmons* criteria and it is used as the standard for determining whether to permit a party to depose opposing counsel.") (collecting other U.S. Magistrate Judge David J. Waxse cases examining the *Simmons* criteria).

7

subpoena requiring a person's attendance at deposition must be served with the fees for one day's attendance and the mileage allowed by law, and the subpoena delivered to Mr. Kuckelman was not served with a check for the required fees and costs. Although failure to tender witness and mileage fees at the time of service of the subpoena technically renders the subpoena invalid,[17] witness and mileage fees were later submitted, prior to the proposed deposition date.[18] Although other jurisdictions have addressed the issue, this Court located no binding case law on the issue of whether a party may "cure" this defect. However, because the Court quashes the subpoena on other grounds, it considers the failure to submit the fees to be a technical issue which the Court will not use as the primary basis to quash the subpoena.[19]

C.     *Shelton* **Criteria**

The parties disagree regarding the use of the heightened standard for evaluating whether Mr. Kuckelman, as opposing counsel, should be deposed. Nelson contends the *Shelton* criteria must be applied and Progressive fails to satisfy those criteria. Progressive argues the use of the heightened standard is 1) not required and inapplicable to the facts

---

[17] *Martinelli v. Petland, Inc.*, No. 10-mc-407-RDR-KGS, 2010 WL 3947526, at *8 (D. Kan. Oct. 7, 2010) (citing *Smith v. Midland Brake, Inc.,* 162 F.R.D. 683, 686 (D. Kan.1995)).

[18] *See* Def.'s Mem. Opp'n, ECF No. 48 at 10, noting that the witness and mileage fees have been provided to Mr. Kuckelman.  Nelson does not dispute this assertion in his Reply.

[19] *See In re New England Compounding Pharmacy, Inc. Products Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *5 (D. Mass. Nov. 13, 2013) (finding that failure to tender the fees does not invalidate the subpoenas, particularly where all subpoenas in question commanded only production of documents); *PHE, Inc. v. Dep't of Justice*, 139 F.R.D. 249, 255 (D.D.C. 1991) (finding, "to the extent that the failure to accompany the Rule 45 subpoena . . . with a check rendered the subpoenas technically defective, the subsequent tender of the check corrected any deficiency . . ."); *Meyer v. Foti*, 720 F. Supp. 1234, 1244 (E.D. La. 1989) (recognizing that the subpoena was invalid because no fee was tendered, but concluding that such "technical defect may be cured").

of this case, and 2) even if the court does apply *Shelton*, the test is satisfied and the deposition should be permitted.

### 1.   **Applicability of *Shelton***

Progressive argues the criteria should not be applied in this case and relies upon two primary decisions from this district to support its assertion. In *McGuire v. American Family Mutual Insurance*,[20] a contract dispute case between a defendant insurance company and its former agent plaintiff, the court declined to apply the *Shelton* criteria when determining whether defendants' counsel may be deposed. However, unlike the instant case, the *McGuire* defendants listed their counsel as a potential witness in their Rule 26(a)(1) disclosures and voluntarily revealed attorney-client communications in support of their "advice of counsel" defense.

In addition to *McGuire*, Progressive relies on the court's decision in *Coffeyville Resources Refining & Marketing v. Liberty Surplus Insurance*,[21] a breach of contract action by plaintiff against its insurers. The defendant insurance company served plaintiff with a deposition notice for its general counsel, and plaintiff sought to quash the subpoena. The court denied the motion to quash on multiple bases. Most notably, and in contrast to the position of counsel in this case, Coffeyville's counsel previously appeared as its Rule 30(b)(6) deposition witness and filed affidavits in support of its summary judgment motions. Therefore, the court found that application of the *Shelton* criteria was

---

[20] *McGuire v. American Family Mut. Ins. Co.*, No. 08–1072–JTM-KMH, 2009 WL 1044945, *3 (D. Kan. 2009).
[21] *Coffeyville Res. Ref. & Mktg. v. Liberty Surplus Ins. Corp.*, No. 08–1204–WEB-KMH, 261 F.R.D. 586 (D. Kan. 2009).

not warranted.

Both the *McGuire* and *Coffeyville* cases are distinguishable because each case involved the intended depositions of counsel whose involvement in each case was multi-faceted. Counsel in *McGuire* was listed as a potential witness and had already divulged privileged information to support the client's "advice of counsel" defense. Counsel in *Coffeyville* had already volunteered himself as a witness.

Neither party addresses the more analogous case law from this district. The 2009 case of *Kannaday v. Ball*[22] (hereinafter "*Kannaday 2009*") was a garnishment action stemming from a 2005 car accident. The plaintiff-garnishor, Rachel Kannaday, an injured passenger in the accident, first filed suit in state court to recover damages against the estate of the driver. After judgment was entered on her behalf, Kannaday filed the garnishment action against Geico, the driver's liability insurer, for its alleged negligence and bad faith acts while defending the estate against Kannaday's lawsuit. Geico then removed the garnishment case to this court, and later sought to depose Kannaday's counsel.

In *Kannady 2009*, the court found "the unique circumstances of this case suggest the [*Shelton* criteria] should not be applied here." The court found *Shelton* inapplicable for multiple reasons: first, because the information sought from plaintiff's counsel pertained to counsel's "actions in the underlying tort case—not to [counsel]'s role as Kannaday's attorney in this garnishment action."[23] Second, Kannaday's counsel

---

[22] *Kannaday v. Ball*, No. 09–2255–JWL-JPO, ECF No. 75 (D. Kan. filed Dec. 3, 2009).
[23] *Id*. at 3.

10

previously deposed the estate's attorney, and thus indirectly Geico, in the underlying tort suit. Additionally, in an effort to avoid deposing counsel, Geico previously served narrowly focused written discovery, to which Kannady served only partial responses and multiple objections. *Kannaday 2009* was a highly contentious case, and the court noted, "given the posture and history of [the] litigation, it appears a deposition of [plaintiff's counsel] is not only the most effective way" for Geico to "get answers, but it is also likely the *only* way Geico will get the information it seeks."[24] The court went on to find, even if the *Shelton* criteria were applied, Geico had established relevance and the information was crucial to its case.[25]

The *Kannaday 2009* case was dismissed after the underlying state court case was overturned on appeal. After a trial was held in state court and new judgment resulted in 2012, Kannaday filed a second garnishment in 2012 to recover the judgment from Geico ("*Kannaday 2012*").[26] Geico again served Kannaday's attorney with a notice of deposition, and, relying on the earlier decision in *Kannaday 2009*, the court found the *Shelton* criteria inapplicable and denied Kannaday's motion to quash the subpoena. Like *Kannaday 2009*, the opinion notes the extensive history of the actions and finds that the deposition is "likely the quickest method to gather" information.[27]

The Court finds the instant case distinguishable from both *Kannaday* actions. This case has been relatively non-contentious and has proceeded through pretrial conference

---

[24] *Id*. at 4 (emphasis in original).
[25] *Id*.
[26] *Kannaday v. Ball*, No. 12-2742-RDR-KGS, 2013 WL 3820013, at *1 (D. Kan. July 24, 2013).
[27] *Id*. at *4.

with little motion practice or unusual procedural history. No other counsel has been previously deposed. Progressive has not suggested any narrowly-focused discovery requests were propounded to Nelson regarding the information sought, nor indicated Mr. Kuckleman has refused to answer any such discovery. Rather, it appears from the information provided that Progressive's first step in seeking information from Mr. Kuckelman was the notice of deposition.

The *Kannaday* opinions differentiate the information relating to the underlying tort claim and sought through counsel's deposition, from counsel's activities during the first or second garnishment actions.[28] But the current garnishment against Progressive is an extension (and quite simply, a removal) of the state court tort action. Even if the tort and garnishment action could be artificially or technically "divorced" from one another, the garnishment was specifically contemplated at the time Hardacre entered into the settlement with Nelson. All parties understood that litigation against Progressive was the next step in litigation. Fed. R. Civ. P. 26(b)(3) requires the court to protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney.[29] Therefore, this Court finds that any protection of counsel's work product or mental impressions remain in the garnishment action.[30]

Recent cases which cited the *Kannaday* rulings are also distinguishable. In *Fugett v. Sec. Transp. Servs., Inc.*, the court determined the heightened standard of *Shelton* need

---

[28] *Kannaday 2009,* No. 09–2255–JWL-JPO, ECF No. 75, at 3; *Kannaday 2012*, No. 12-2742-RDR-KGS, 2013 WL 3820013, at *3.
[29] *Frederick v. Swift Transp. Co.*, No. 06-1332-MLB-KMH, 2007 WL 2265504, at *1 (D. Kan. Aug. 6, 2007).
[30] *See* discussion *infra* Part C.2.b.ii..

not be applied; specifically in the "situation in which the party seeking to prevent the deposition of its attorney had itself listed the attorney as a potential witness in its Rule 26(a)(1) initial disclosures."[31]  In *Perez v. Alegria*,[32] a wage and hour case, the opposing counsel sought to be deposed served a dual role as both counsel and a member of the LLCs which operated the restaurants being investigated.

In light of the above, and on the facts presented, the Court finds prevention of "abuse, delay, disruption, harassment, or unnecessary distractions into collateral matters"[33] is best achieved in this case by application of the *Shelton* criteria.  The timeline provided by Nelson, along with supporting exhibits (and particularly the excerpts from Progressive's own claim file), demonstrate Mr. Kuckelman did not contact Bill Hardacre until several days after Progressive informed him its file was closed and it would not consider a claim by Nelson.[34]  This timeline makes it seem less likely that Mr. Kuckelman engineered the bad faith claim against Progressive.  However distasteful it might have been for Mr. Kuckelman to contact Bill Hardacrre, the conduct of Mr. Kuckelman appears to be a collateral matter and the Court will apply the heightened standard to determine whether his deposition should be allowed.

---

[31] *Fugett v. Sec. Transp. Servs., Inc.*, No. 14-2291-JAR-KGS, 2015 WL 419716, at *2 (D. Kan. Feb. 2, 2015).
[32] *Perez v. Alegria*, No. 15-MC-401-SAC-KGS, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) *report and recommendation adopted,* No. 15-MC-401-SAC, 2015 WL 4744480 (D. Kan. Aug. 11, 2015) (citing *Fugett.,* 2015 WL 419716, at *4 and *Kannaday 2012,* 2013 WL 3820013).
[33] *Ed Tobergte Associates Co.*, 259 F.R.D. at 554.
[34] Pl.'s Reply, ECF No. 54, Ex. 5.

### 2.  Analysis of *Shelton* Factors

#### a.  Whether Other Means Exist To Obtain the Information

Progressive is first tasked with demonstrating that no other means exist by which to obtain the information it desires except to depose Mr. Kuckelman. Progressive seeks to discover Mr. Kuckelman's "communications with Progressive, other insurance companies, Progressive's insureds, and others (aside from Nelson)."[35] However, Progressive acknowledges written communications between Mr. Kuckelman and all of those parties mentioned not only exist, but have been previously produced through discovery. Bill Hardacre was asked at deposition about communications with Mr. Kuckelman, and although he apparently remembered little about the conversation, Mr. Kuckelman followed up the oral communication with a letter, outlining the content of the same. All of those communications have been produced. Additionally, pointed discovery could have done much to fill in any blanks which Progressive found missing without the expense and corollary issues which may occur from deposing opposing counsel. Therefore, the Court finds that Progressive has not met its burden to show no other means exists by which to obtain the information it seeks.

#### b.  Relevance and Privilege

##### i.  Relevance

Progressive relies heavily on the Tenth Circuit ruling in *Wade v. EMCASCO*

---

[35] Def.'s Mem. Opp'n, ECF No. 48, at 8.

14

*Insurance*[36] to argue the conduct of Mr. Kuckelman, as counsel for the third-party claimant Nelson, is relevant to this bad faith case.  Progressive maintains that examining Mr. Kuckelman's actions—his alleged engineering of the bad faith claim—would assist the Court in gauging the reasonableness of Progressive's own conduct during the review of Nelson's claim.

In *Wade*, as in this case, the injured third-party plaintiff, as an assignee of the contractual rights of the insured, brought a bad faith claim against the insurer.  Initially, plaintiff offered a policy-limits settlement demand soon after an automobile accident where liability and causation were strongly disputed.[37]  But plaintiff withdrew the offer before providing medical records to the insurer, and then rejected the insurer's later policy-limits offer because plaintiff hoped to recover more damages from a bad-faith claim.  The Tenth Circuit focused on the third-party plaintiff's establishment of an arbitrary deadline by which the insurer must accept his settlement offer, which the insured failed to meet.  The district court granted summary judgment in favor of the insurer against both the plaintiff and the insured, finding:

> [t]he demand for settlement early in the dispute, its [the offer's] short duration, the contemporaneous existence of significant questions as [to] liability, and the failure of plaintiff's counsel to follow through on commitments to supply necessary medical evidence supporting his client[']s claim compelled a finding that EMCASCO did not act negligently or in bad faith in waiting to settle [the] claim until it had obtained all of the medical information.[38]

Upholding the district court's ruling, and citing rulings in other jurisdictions, the

---

[36] *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657 (10th Cir. 2007).
[37] *Id*. at 660.
[38] *Id*. at 665 (internal citations omitted).

15

Tenth Circuit analyzed the third-party plaintiff's motives in setting a time limit for the settlement offer and notes "the reasons for a specific deadline may be relevant to whether the claimant has 'set up' the insurer for a claim of bad faith."[39] In three specific cases examined by the court in *Wade*, each "plaintiff placed a deadline on a settlement offer while failing to comply with a promise to provide relevant medical records."[40]

While it is true *Wade* considered "relevant aspects of the third-party plaintiff's conduct" in connection with the conduct of the insurer,[41] that analysis was in the context of examining arbitrary deadlines imposed by the plaintiff. Although *Wade* discusses at length the court's desire to avoid "manufacturing of bad-faith claims" by claimants, the elements present in *Wade* are not present here. Mr. Kuckelman, on behalf of Nelson, did not fail to accept a settlement and imposed no unilateral deadlines. In *Wade*, the third-party plaintiff *admitted* his basis for rejecting the insurer's later policy-limits offer was his hope to pursue a bad faith claim.[42] Here, Nelson's timeline demonstrates *Progressive* first refused any claim by Nelson—not the other way around—only days after Mr. Kuckelman's initial contact with the insurer. Therefore, "the facts of this case do not raise a suspicion of the 'cat-and-mouse' game between claimants and insurers cautioned against in *Wade*"[43] and, although Mr. Kuckelman's contact with the unrepresented insured may have been atypical, the Court finds very little, if any, relevance in Mr.

---

[39] *Id*. at 669 (citing *Miel v. State Farm Mutual Automobile Insurance Co.,* 185 Ariz. 104, 912 P.2d 1333, 1336 (1995)).

[40] *Id*. at 671 (citing *Williams v. American Family Mutual Insurance Co.,* 101 F. Supp. 2d 1337 (D. Kan. 2000); *Covill v. Phillips,* 452 F.Supp. 224 (D. Kan. 1978), and *Glenn v. Fleming,* 247 Kan. 296, 799 P.2d 79, 90–91 (1990).

[41] *Id*. at 670.

[42] *Id*. at 673.

[43] *Roberts v. Printup*, 595 F.3d 1181 (10th Cir. 2010).

Kuckelman's actions.

### ii. Privilege and Work Product Protection

Progressive concedes it does not seek attorney-client privileged information about Mr. Kuckelman's representation of Nelson in this garnishment action. Progressive argues it only wants to inquire about information he may possess regarding the time period before the underlying tort case was filed against Hardacre and during the underlying lawsuit.[44] But in its *single* paragraph addressing the issue of privilege, Progressive does not address Mr. Kuckelman's mental impressions developed in anticipation of this litigation, and provides no authority by which this Court is bound to consider those protections existing in the underlying lawsuit as waived once the litigation reaches this federal court.

"In diversity cases, work-product protection is governed by the uniform federal standard outlined in Fed. R. OCiv. P. 26(b)(3)."[45] For Nelson to establish work-product protection, he must demonstrate "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party.'"[46] If a court orders discovery of documents and tangible items, it "*must* protect" the "mental impressions,

---

[44] Def.'s Mem. Opp'n, ECF No. 48 at 9.
[45] *Kannaday 2012*, 292 F.R.D. at 648 (citing *Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (internal citations omitted)).
[46] *Id.* (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (internal citations omitted)).

17

conclusions, opinions, or legal theories of a party's attorney."[47] For work product protection to apply, "there must be a real and substantial probability that litigation will occur at the time the documents were created."[48]

To determine whether the doctrine should apply in this case, the Court examines Progressive's motives for deposing Mr. Kuckelman. Progressive argues it is clear Nelson "never had any *intent* to settle the case for Progressive's policy limits."[49] It appears, because Progressive focuses on Nelson/Mr. Kuckelman's intent, Progressive's goal is to ask Mr. Kuckelman his legal strategy regarding his contact with Bill Hardacre, and his legal strategy for failing to make a policy-limits demand after Progressive denied his initial claim. The Court finds the existence of a "real and imminent threat"[50] of litigation during the time periods from which information is sought by Progressive; therefore this Court views counsel's intentions as his mental impressions and legal theories protected by Rule 26(b)(3).

It is noteworthy that Mr. Kuckelman's actual communications with Bill Hardacre—or any other non-client party—are not covered by any privilege. Nelson does not argue this point. Although the work product doctrine prevents inquiry into his legal theories and mental impressions, the communications themselves are facts which are not prevented from disclosure. However, as described above, this information is available

---

[47] Fed. R. Civ. P. 26(b)(3) (emphasis added); *Frederick v. Swift Transp. Co.*, No. 06-1332-MLB-KMH, 2007 WL 2265504, at *1 (D. Kan. Aug. 6, 2007).
[48] *Kannaday 2012*, 292 F.R.D. at 648 (citing *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007)).
[49] Def.'s Mem. Opp'n, ECF No. 48 at 9 (emphasis added).
[50] *McCoo v. Denny's Inc.*, No. 98–2458–RDR-DJW, 192 F.R.D. 675, 683 (D. Kan. 2000) (citing *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.,* No. 94–2395–GTV-GLR, 1995 WL 625962, at *9 (D. Kan. Oct.5, 1995)).

through the written communications already produced—including, specifically, the two letters from Mr. Kuckelman to Bill Hardacre.

### c. Whether the Information is Crucial

The final step in application of the *Shelton* criteria obliges the Court to determine whether the information sought is crucial to the requesting party's preparation of its case. Progressive argues that information held by Mr. Kuckelman is "highly central" to its case, but then merely restates the information is necessary because of its relevance and non-privileged nature, without explaining the centrality of the information sought. As discussed above, because the Court finds little relevance in the information sought, and finds Mr. Kuckelman's legal theories throughout the litigation are protected, Progressive fails to demonstrate why the information is crucial to its case.

### D. Conclusion

The intended deposition of opposing counsel is fraught with difficulty, leading the Court to impose increased scrutiny regarding the use of this discovery method. Applying this heightened standard, the Court finds that Progressive, as the party seeking to depose counsel for Nelson, has not met its burden to demonstrate satisfaction of all three *Shelton* criteria. Because written communications between all parties have been produced and relevant parties deposed, the first criteria cannot be satisfied. Even if the information sought from Mr. Kuckelman is minimally relevant, his legal theories and mental impressions are protected from disclosure. Finally, Progressive fails to demonstrate why the information sought from opposing counsel is crucial to its case. Therefore, as

described in *Shelton*, the Court finds that a deposition of Mr. Kuckelman would constitute an "unnecessary distraction into collateral matters" and would almost certainly create additional "pretrial delays to resolve work-product and attorney-client objections"[51] if such a deposition were to occur.

**IT IS THEREFORE ORDERED** that Plaintiff/Judgment Creditor Grant M. Nelson's Motion to Quash Subpoena Directed to Nelson's Attorney, Michael Kuckelman, (**ECF No. 44**) is **GRANTED**.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 12th day of January 2016.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[51] *Shelton,* 805 F.2d at 1327.