IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GRANT M. NELSON, )
 )
               Plaintiff, )
 )
v. ) Case No. 15-7454-JWL
 )
PROGRESSIVE NORTHWESTERN )
INSURANCE COMPANY, )
 )
               Defendant. )
 )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motions by defendant Progressive Northwestern Insurance Company ("Progressive") to strike plaintiff's expert (Doc. # 47) and for summary judgment (Doc. # 62). For the reasons set forth below, the Court **denies** both motions.

### I.    **Background**

This matter had its origins in a motor vehicle accident occurring on October 4, 2013, in Overland Park, Kansas, at the intersection of Nall and 103rd Street. Stefanie Hardacre, while traveling southbound on Nall, entered and waited in the intersection intending to turn left onto eastbound 103rd Street. Marshall Leffler was traveling northbound on Nall. The vehicles of Ms. Hardacre and Mr. Leffler collided while Ms.

Hardacre was attempting to complete her left turn. Mr. Leffler's vehicle then struck a motorcycle ridden by plaintiff Grant Nelson, who was waiting at the red light traveling westbound on 103rd Street, and who suffered injuries.

The police report from the responding officer contained summaries of statements by two witnesses to the accident. Jaclyn Ross stated that Ms. Hardacre was waiting at the light to turn left on yellow and that Mr. Leffler ran a red light and struck Ms. Hardacre's car. Leslie Dannecker, who had been in the left turn lane on westbound 103rd Street, stated that she observed Ms. Hardacre waiting for the intersection to clear to make a left turn, that the light for Ms. Dannecker turned green and Ms. Hardacre began to complete her turn, and that Mr. Leffler entered the intersection on a red light and struck Ms. Hardacre. Mr. Leffler was later mailed a citation for disobeying a red light. In the section of the report indicating the officer's opinion of apparent contributing circumstances, Officer Naylor entered a code for Mr. Leffler indicating the running of a red light, and he entered a code for Ms. Hardacre indicating no contributing circumstance.

Defendant Progressive issued an insurance policy to Ms. Hardacre's parents that covered Ms. Hardacre as a driver and that was in effect at the time of the accident. The policy provided a bodily injury liability limit of $50,000 per person. The accident was reported to Progressive on October 5, 2013, and Progressive began investigating the accident on October 7. An adjuster reviewed the police report and obtained statements from Ms. Hardacre, Ms. Dannecker, Ms. Ross, Mr. Leffler, and Wilma Mallon, another

witness noted on the police report. Ms. Hardacre stated that she waited in the intersection to make her left turn, that she began the turn when her light turned red, that she braked when she saw that Mr. Leffler would run the red light, and that Mr. Leffler accelerated through the red light and struck her vehicle. Ms. Dannecker stated that her light had turned green as Ms. Hardacre was completing her turn, that Mr. Leffler exceeded the 40-miles-per-hour speed limit, that Mr. Leffler ran the red light, and that Ms. Hardacre's vehicle was not moving at the time of impact. Ms. Ross stated that Mr. Leffler came out of nowhere and caused the accident and that she felt that Mr. Leffler was at fault. Ms. Mallon stated that was waiting at the intersection behind plaintiff's motorcycle and that the light turned green just about when Mr. Leffler struck plaintiff.[1] Mr. Leffler stated that the light was green when he entered the intersection. Progressive's adjuster also spoke with an adjuster for plaintiff's insurer, Farm Bureau, who reported that, according to plaintiff's statement, plaintiff did not know what color the light was at the time of the accident. The adjuster and three other claims personnel conducted a "roundtable" review of liability and concluded that Mr. Leffler was 100 percent at fault for the accident, although Progressive would consider and accept up to 20 percent liability for Ms. Hardacre if Mr. Leffler's insurer (Travelers) provided credible evidence other than Mr. Leffler's statement to contradict the finding of fault by Mr. Leffler.

---

[1] The officer later testified in his deposition that after the light turned red for traffic on Nall, the lights in both directions would have been red for a period of 1.8 seconds.

On October 18, 2013, Progressive received a letter of representation, dated October 11, from plaintiff's counsel. Progressive sent a letter of acknowledgment on October 18, in which it requested copies of any supporting documentation, and Progressive transferred the claim to another adjuster. The second adjuster reviewed the information, agreed with the prior conclusion of no fault for Progressive's insured, and obtained a claims supervisor's approval for a denial of liability. On October 21, 2013, the adjuster sent a letter to plaintiff's counsel denying the claim based on Progressive's conclusion that Ms. Hardacre was not at fault in the accident.

By letter of November 1, 2013, plaintiff's counsel disagreed with Progressive's liability determination, alleged that Progressive had breached duties to and had a conflict of interest with its insured, and indicated that litigation was anticipated. On November 12, Progressive reopened the claim and set reserves at $50,000. On April 11, 2014, plaintiff filed suit against Ms. Hardacre in the District Court of Johnson County, Kansas, and Progressive provided counsel for Ms. Hardacre. In June 2014, plaintiff made his first settlement demand, in the amount of $1,000,000, based in part on allegations of bad faith by Progressive. Ms. Hardacre's attorney requested that Progressive tender in settlement the policy limit of $50,000, although she indicated that it was very unlikely that plaintiff would accept such a settlement; Progressive did not make such an offer, however. At a mediation in January 2015, Progressive did offer the policy limit of $50,000 to settle the case, and plaintiff rejected the offer.

In April 2014, plaintiff's insurer, Farm Bureau, notified Mr. Leffler's insurer,

4

Travelers, that Farm Bureau's investigation had revealed that Mr. Leffler bore 100 percent of the responsibility for the accident. In July 2014, a neutral arbitrator, ruling on a property damage claim between Progressive and Travelers, found that Mr. Leffler was 100 percent at fault for the accident.

In January 2015, subsequent to the mediation, plaintiff and Ms. Hardacre entered into a settlement agreement. By that agreement, plaintiff agreed to limit his collection efforts to Progressive's assets and not to execute against Ms. Hardacre on any judgment; and Ms. Hardacre agreed to assign any claim against Progressive to plaintiff and to waive the right to a jury trial on plaintiff's claim against her. Ms. Hardacre also agreed that she would not present evidence, make objections, or cross-examine witnesses at trial, and that she would otherwise cease defending the claim. At the subsequent bench trial in state court, which included testimony from plaintiff, the responding officer, and a physician, the court entered judgment in plaintiff's favor against Ms. Hardacre, based on a finding that Ms. Hardacre bore 100 percent of the fault for the accident, in the amount of $530,539.11.[2]

In this suit, plaintiff asserts, by way of the assignment of claims by Ms. Hardacre, that Progressive acted negligently and in bad faith in handling plaintiff's claim and in

---

[2]No witness at the trial testified concerning the color of the light when Mr. Leffler entered the intersection. Plaintiff testified that he had been stopped at the red light before the collision, but he did not state that the light was still red at the time of the collision. Nevertheless, the state court judge inferred from that testimony that Mr. Leffler must have had a green light, and he based his liability finding on that testimony.

failing to settle that claim for the policy limit of $50,000. Plaintiff seeks to recover the entirety of the state court judgment from Progressive, as well as an award of attorney fees under Kansas law.

## II.     Motion to Strike Plaintiff's Expert

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert scientific testimony. *See id.* at 589-93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, this Court must undertake a two-part analysis: first, the Court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the Court must determine whether the witness's opinions are "reliable" under the principles set forth in *Daubert* and *Kumho Tire*. *See Ralston v. Smith &*

6

*Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702 advisory committee notes.

The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *See Kumho Tire*, 536 U.S. at 152. "Furthermore, while *Daubert*'s standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *See Attorney Gen'l of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009) (citation omitted).

Progressive seeks to exclude the opinions of plaintiff's expert witness, Jim Leatzow. Mr. Leatzow offers opinions concerning Progressive's handling of the claim by plaintiff against Progressive's insured, Ms. Hardacre.

Progressive first argues that Mr. Leatzow's opinions should be excluded because he is not sufficiently qualified to offer them. Mr. Leatzow's long experience in the insurance industry includes claims handling. In arguing that Mr. Leatzow is not sufficiently qualified, Progressive focuses on Mr. Leatzow's lack of experience particularly with respect to the handling of *automobile* claims. Progressive has not offered any reason why such specialization is necessary here, however, or suggested any difference between the handling of automobile claims and the handling of other claims—even after plaintiff raised this point in his response brief.

The Court in its discretion rejects this basis for exclusion of Mr. Leatzow's

testimony. The Court will be able at trial to consider Mr. Leatzow's qualifications and to weigh his opinions accordingly.

Progressive also seeks to exclude some of Mr. Leatzow's opinions because of the lack of the necessary "fit" between those opinions and the facts of this case. Progressive notes that Mr. Leatzow in his deposition testimony found no fault with various steps of Progressive's initial investigation of the claim, and it argues that Mr. Leatzow, in opining that Progressive's investigation was insufficient, did not consider the work that Progressive actually did in that investigation. The Court rejects this argument for exclusion, which goes to the weight to be given to Mr. Leatzow's opinions and not to their admissibility. Mr. Leatzow's report indicates that he considered all relevant material, and Progressive has not provided any evidence that he did not in fact consider particular facts in forming his opinions. Mr. Leatzow's failure to find fault with every investigative step actually taken by Progressive is not remarkable and does not provide a basis for exclusion. Progressive will be free to cross-examine Mr. Leatzow at trial concerning the weight he gave to particular facts in forming his opinions, and the Court will assign only such weight to those opinions as warranted by the evidence. The Court denies Progressive's motion to strike.

### III.  Motion for Summary Judgment

Progressive also moves for summary judgment on plaintiff's claim that Progressive acted negligently and in bad faith with respect to plaintiff's claim against

Progressive's insured, Ms. Hardacre. Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).

### A. *Progressive's Handling of the Claim*

Progressive argues that it is entitled to summary judgment because it did not act negligently or in bad faith with respect to plaintiff's claim as a matter of law. Under the applicable Kansas law, an insurer may be liable for amounts exceeding the policy limit if it fails to act in good faith and without negligence in defending and settling a claim against its insured. *See Glenn v. Fleming*, 247 Kan. 296, 305 (1990).

Progressive argues that it reviewed the statements of all witnesses to the accident, that it reasonably concluded that its insured bore no fault for the accident, and that it therefore reasonably denied plaintiff's claim. Progressive also notes that it reopened its file when it received a letter from plaintiff's counsel challenging the denial and that plaintiff made no settlement demand until after suit was filed, and it argues that it reasonably rejected plaintiff's demand of $1,000,000. It further notes that it did eventually offer the policy limit of $50,000, which offer plaintiff rejected.[3]

---

[3]Plaintiff objects to various factual statements by Progressive as based on
(continued...)

9

In response, plaintiff questions Progressive's reliance on one witness's statement, in light of her mistake concerning the direction she was traveling at the time. Plaintiff also stresses that the damage indicates that the front of Ms. Hardacre's car actually struck the side of Mr. Leffler's car, which would contradict the position that Mr. Leffler ran the red light and struck Ms. Hardacre. Plaintiff notes that Progressive initially denied the claim before knowing the full extent of plaintiff's damages and despite knowing that plaintiff's injuries were "serious". Plaintiff argues that Progressive's eventual offer of the policy limit at mediation shortly before trial came too late, after plaintiff was forced to initiate and litigate a lawsuit.

Plaintiff's claim in this case appears weak, as nearly all of the evidence indicates that Mr. Leffler was entirely at fault for the accident and that Ms. Hardacre would therefore not be found liable for any damages. One witness's confusion about directions does not necessarily undermine her statement that Mr. Leffler ran a red light, and other witnesses corroborated that statement. Moreover, the fact that the front of Ms. Hardacre's car collided with the side of Mr. Leffler's car does not preclude a finding that Mr. Leffler entered the intersection on red.

Nevertheless, there is at least *some* evidence that could support a finding that

---

[3](...continued)
inadmissible evidence, particularly the police report, opinions by the police officer, the assignment of fault by plaintiff's insurer, and the arbitration decision. The Court agrees with Progressive, however, that such evidence is admissible as evidence that informed or confirmed Progressive's decision concerning fault.

some percentage of fault would have been apportioned to Ms. Hardacre. For instance, Mr. Leffler stated that he entered the intersection on green, and a jury might have found that testimony credible, despite the number of contrary witness statements. Moreover, the seriousness of plaintiff's injury meant that even a small allocation of fault to Ms. Hardacre could have exhausted the policy limit of $50,000, leaving the possibility of an excess judgment. Thus, viewing the evidence in the light most favorable to plaintiff, the Court concludes that a question of fact remains concerning whether Progressive acted negligently or in bad faith in handling the claim and in failing to attempt to secure a settlement for the policy limit to protect the interest of its insured.

Progressive relies heavily on the facts that plaintiff never made a settlement demand within the policy limit, that plaintiff made no pre-suit demand in any amount, and that it did eventually offer the policy limit to settle plaintiff's case, which offer plaintiff rejected. The Tenth Circuit has made clear, however, that under Kansas law an insurer must act reasonably to protect the insured's position even in the absence of an offer from the claimant, as "[t]he duty to consider the interests of the insured arises not because there has been a settlement offer from the plaintiff but because there has been a claim for damages in excess of the policy limits." *See Coleman v. Holecek*, 542 F.2d 532, 537 (10th Cir. 1976); *accord Roberts v. Printup*, 422 F.3d 1211, 1215 (10th Cir. 2005). The existence of such a claim creates a conflict of interest between insured and insurer that requires the insurer to give equal consideration to the interests of the insured. *See Roberts*, 422 F.3d at 1215 (citing *Coleman*, 542 F.2d at 537). Indeed, because of the

insurer's duty to make reasonable efforts to settle a claim against the insured, the insurer may be obligated to initiate settlement negotiations regardless of the actions of the claimant. *See id.* at 1215-16 (citing *Smith v. Blackwell*, 14 Kan. App. 2d 158 (1989)). Moreover, Progressive's eventual offer for the policy limit does not preclude plaintiff's claim:

> It is also relevant that in general under Kansas law "all the good faith and settlement offers in the world *after* suit is filed will not immunize a company from the consequences of *an unjustified refusal to pay* which made the suit necessary." *Sloan v. Employers Cas. Ins. Co.*, 214 Kan. 443, 521 P.2d 249, 251 (1974) (emphasis added). "If an insurer were permitted to 'cure' an earlier breach of a fiduciary duty, the policy of encouraging an insurer to exercise due care and attempt to settle claims in a fair and expeditious manner would be undermined." *Smith v. Blackwell*, 14 Kan. App. 2d 158, 791 P.2d 1343, 1347 (1989).

*See Roberts v. Printup*, 595 F.3d 1181, 1187-88 (10th Cir. 2010). Progressive also argues that a pretrial offer of the policy limit would have been futile, but the Court cannot say as a matter of law that an early attempt to settle for the limit would not have been successful.

In summary, the Court concludes that this issue of whether Progressive acted negligently or in bad faith is better resolved at trial, after the Court has had the opportunity to weigh all of the evidence. Accordingly, the Court denies Progressive's motion for summary judgment on this basis.

### B.     *Breach of the Cooperation Clause*

Progressive also argues that, even if it did act negligently or in bad faith with respect to plaintiff's claim, liability is nonetheless precluded by Ms. Hardacre's breach

12

of the insurance policy's provision requiring her to cooperate with respect to any claim and to attend the trial. Progressive argues that Ms. Hardacre breached that cooperation clause by entering into the settlement agreement with plaintiff that required her to forgo any defense of the suit at trial. *See Boone v. Lowry*, 8 Kan. App. 2d 293, 299 (1983) (citing *Jameson v. Farmers Mutual Auto. Ins. Co.*, 181 Kan. 120, 127 (1957)) (breach of a policy's cooperation clause may relieve an insurer of responsibility if the breach caused substantial prejudice to the insurer's ability to defend itself); *Kannaday v. Ball*, 2014 WL 117261, at *7 (D. Kan. Jan. 12, 2014) (citing *Boone*). Plaintiff does not dispute that Ms. Hardacre breached the clause or that such breach caused Progressive substantial prejudice.

Plaintiff argues that Progressive's prior breach of its duties under the policy excused Ms. Hardacre's compliance with the cooperation clause. The undersigned addressed this issue in *Youell v. Grimes*, 217 F. Supp. 2d 1167 (D. Kan. 2002) (Lungstrum, J.). In that case, the Court concluded that under Kansas law an insurer cannot escape liability on the basis of a breach of the cooperation clause if the insurer had already wrongfully denied coverage. *See id.* at 1175. The Court noted, however, that it had been unable to locate any caselaw suggesting that a breach by the insurer of any *other* obligation, such as the duty to investigate, could relieve the insured of its obligation to cooperate. *See id.* at 1176. The Court stated that it did not need to resolve that legal issue because there was not sufficient evidence of such a prior breach in that case. *See id.* Subsequently, in *Kannaday v. Ball*, 2010 WL 2346368 (D. Kan. June 9,

13

2010) (Lungstrum, J.), the Court denied summary judgment in favor of the insurer because a fact question remained concerning whether the insured had failed to cooperate. *See id.* at \*10. In a footnote, in addressing the plaintiff's argument that "any breach of a duty of cooperation . . . was excused by [the insurer's] prior material breach in failing to settle within policy limits," the Court noted that in *Youell* it had "found no support for the position that a prior breach other than a wrongful denial of coverage could relieve a party of its duty of cooperation." *See id.* at \*10 n.3 (citing *Youell*, 217 F. Supp. 2d at 1175-76).

Neither party has directly addressed *Youell* or *Kannaday* or this issue of whether a breach other than a denial of coverage may excuse compliance with a cooperation clause under Kansas law. In arguing that there was a prior material breach here, however, plaintiff relies on an opinion by another judge in this district. *See Blann v. Rogers*, 22 F. Supp. 3d 1169 (D. Kan. 2014). In *Blann*, the court, citing *Youell* and *Kannaday*, noted that it was not clear that the general prior-material-breach rule applies when the insurer does not deny coverage but breaches the contract in other ways, and that it had found no Kansas law excusing performance in such a circumstance. *See id.* at 1181. Nevertheless, the Court concluded (after a trial) that because of the quantity and materiality of the insurer's prior breaches, including the repeated and blatant failure to communicate and to give consideration to the insured's position, the case presented "a model example of when the general law on excusal of performance should apply." *See id.* Thus, the court rejected the insurer's argument based on a breach of the cooperation

14

clause by the insured even without a denial of coverage. *See id.*

Similarly, in this case, Progressive did not deny coverage, but rather provided for its insured's defense of the suit. The parties have not cited any other cases addressing this issue, but *Blann* at least provides some authority under Kansas law for excusing an insured's breach of a cooperation clause even without a denial of coverage. *Blann* is not binding on this Court, and the Court notes the lack of any precedent from Kansas courts or the Tenth Circuit that would support plaintiff's reliance on a prior material breach in these circumstances. Because the parties have not briefed the issue, however, the Court will not rule on the question at this time and will permit plaintiff's claim to go forward.

Progressive does argue that plaintiff cannot show an uncured material breach by Progressive with respect to the claim, as required for the suspension of Ms. Hardacre's obligation to comply with the cooperation clause. *See Lassiter v. Topeka Unified Sch. Dist. No. 501*, 347 F. Supp. 2d 1033, 1041 (D. Kan. 2004) (Lungstrum, J.) ("A party's uncured material breach of a contract can suspend or discharge the other party's obligation to perform."). Progressive argues that even if it breached by denying the claim or by failing to settle the case initially, it cured those breaches by reopening its file and by later offering the policy limit to settle the case. As noted above, however, an offer after suit has been file does not necessarily cure a prior breach.[4]

---

[4]The Court also rejects Progressive's argument that the Court should not consider *Blann* because that 2014 opinion could not have informed its initial investigation in 2013. Progressive's duties as an insurer under Kansas law were well established at the
(continued...)

15

The Court has already concluded that a question of fact remains for trial concerning whether Progressive breached duties to its insured. Accordingly, because the Court leaves the pertinent legal issue unresolved at this time, it cannot rule as a matter of law that Ms. Hardacre's breach of the cooperation clause was not excused by a prior material breach by Progressive. The Court therefore denies Progressive's motion for summary judgment on this basis.

### *C.  Causation*

Finally, Progressive argues that it is entitled to summary judgment because, even if it breached duties to its insured, such breach was not the legal cause of the excess judgment entered by the state court. Progressive argues as a matter of law that the judgment was solely caused by Ms. Hardacre's refusal to defend the claim against her at trial and by plaintiff's counsel's intent to pursue a bad faith claim against Progressive.

Progressive relies for this argument on *Wade v. EMASCO Insurance Co.*, 483 F.3d 657 (10th Cir. 2007), in which the court noted that, for the plaintiff to recover, there must be a causal link between the insurer's conduct and the excess judgment against the insured. *See id.* at 673-74 (quoting *Hawkins v. Dennis*, 258 Kan. 329 (1995)). In that case, the Tenth Circuit held that the insurer's refusal to settle was not the legal cause because, according to the undisputed evidence, the plaintiff's counsel rejected a

---

[4](...continued)
time of its investigation. The Court may certainly consider the opinion in *Blann* to the extent that it is persuasive on the legal issue of whether a prior breach other than a denial of coverage can excuse compliance with a cooperation clause.

16

settlement offer of the policy limit as part of a strategy to establish a bad faith claim against the insurer for its failure to settle the case earlier. *See id.* at 674. Progressive argues that the present case involves a similar attempt by plaintiff's counsel to establish a bad faith claim, as evidenced by the reference to a breach of duty by Progressive in an early letter from counsel.

In *Roberts v. Printup*, 595 F.3d 1181 (10th Cir. 2010), however, the Tenth Circuit reversed a ruling in which the district court, relying on *Wade*, concluded that the requisite causation was lacking. The Tenth Circuit noted that it had held in *Wade* that "the causal link is broken when an injured party manufactures a lawsuit in an effort to recover a larger award and thereby causes the insurance company's delay in accepting the settlement offer." *See id.* at 1187 (citing *Wade*, 483 F.3d at 674). The court distinguished the case before it from *Wade*, in which the injured party had "imposed arbitrary settlement deadlines and deprived the insurer of information in order to hamper the insurer's ability to investigate the accident," the insurer had acted reasonably, and thus "the delay in accepting the offer was attributable *entirely* to the injured party's manipulation of the insurer." *See id.* at 1189 (emphasis in original) (citing *Wade*, 483 F.3d at 671-73). In the case before it, on the other hand, the insurer (who bore the burden to prove causation by an intervening cause) had provided no evidence of an arbitrary deadline or a failure to provide sufficient information to allow the insurer to make a fair appraisal of the case. *See id.* at 1189-90. Thus, the court concluded that the facts there did not "raise a suspicion of the 'cat-and-mouse' game between claimants and

17

insurers cautioned against in *Wade*," and it ruled that the insurer's negligence was the cause of the insured's exposure to the excess judgment. *See id.* at 1191.

In the present case, as noted above, the Court cannot conclude as a matter of law that Progressive did not breach some duty to its insured, Ms. Hardacre, in failing to attempt to settle the claim for the policy limit. Similarly, because it must view the facts in the light most favorable to plaintiff, the non-moving party, the Court cannot conclude as a matter of law that Progressive has met its burden to prove that the alleged breach of a duty to the insured could not have been the cause of the excess judgment awarded by the state court. Specifically, a question of fact remains whether plaintiff hampered Progressive's ability to investigate or evaluate the claim reasonably. Like the other issues discussed herein, this issue is better resolved after the Court fully considers the evidence at trial. The Court therefore denies Progressive's motion for summary judgment.[5]

IT IS THEREFORE ORDERED BY THE COURT THAT defendant Progressive's motion to strike plaintiff's expert (Doc. # 47) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant Progressive's

---

[5]The Court also denies plaintiff's request for summary judgment in his favor pursuant to Fed. R. Civ. P. 56(f)(1). In his summary argument in support of this request, plaintiff has not made any attempt to explain how he is entitled to judgment as a matter of law if the facts are viewed in the light most favorable to Progressive.

motion for summary judgment (Doc. # 62) is hereby **denied**.

      IT IS SO ORDERED.

      Dated this 7th day of March, 2016, in Kansas City, Kansas.

                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge